## Edward Ferris *against* John B. Coles.

DEBT by the inspector of *New-York*, for two penalties under the act for the " inspection of flour and meal,"\* subject to the opinion of the court, whether he was entitled to recover both, one, or neither.

\* 1 *Rev. Laws*, 424.

ALBANY
August, 1805.

Ferris
v.
Coles.

Under the " act " for the inspection of " Flour and " Meal," on such only as is

ALBANY,
August, 1805.

Ferris
v.
Coles.

———

purchased, manufactured, or shipped for exportation, do the penalties attach, and if an inspector, without being requested, inspect against the will of the proprietor, tho' every cask be deficient in weight, and falsely tared, debt will not lie for the penalties, unless it appear the flour or meal was for exportation.

The declaration stated, that "*Edward Ferris*, who sues "in this behalf, as well for the poor of the city of *New-York*, "as for himself, complains of *John B. Coles*," &c. "that "he render to the said poor, and to the said *Edward*, who "sues as aforesaid, five hundred and thirty-seven dollars "and sixty cents, which he owes to, and unjustly detains "from them. For that, whereas," by the act it was enacted, that all wheat flour "manufactured for exportation," should be packed in casks of a certain length, containing a certain number of pounds, "the tare of each cask to be respective- "ly marked on one head with a marking iron," the net weight only of each cask "packed as aforesaid," to be branded on it, and that the manufacturer or owner of any flour put up in casks, should "be subject to a penalty of "50 cents, for every pound such cask was tared less than "the true weight thereof, and any inspector of flour or "meal, *having reason to suspect* such cask or casks to be "falsely tared, might ascertain the same by a suitable ex- "amination thereof," and further, "that it should be the "duty" of the inspectors, "upon application to them made, "to examine and determine the quality of such flour," and "from time to time to weigh *such casks* of flour as *they* "*should suspect* of being too light; and if found not to "contain the just and true weight, to mark or brand the "same on the head with the word *Light*, and for each cask, "which they should so mark or brand, they should be en- "titled to receive from the owner, for their trouble of "weighing the same, the sum of twenty cents for every "barrel," and the manufacturer of such flour to "forfeit "and pay for every pound weight of flour deficient, the "sum of twenty cents," the same "to be recoverable be- "fore any justice of the peace, or in any court of record "in this state having cognizance thereof, by any person, "who would prosecute for the same, one half to the prose- "cutor, and the other half to *be paid to the overseers of* "*the poor* of the city or town, where the fraud was detect- "ed ;" the declaration then set forth, that the defendant, after the passing of the act, to wit, on &c. was "the owner "of 384 half-barrels of flour tared two pounds each, less "than the true weight thereof, by reason whereof, and by

ALBANY,
August, 1805.

Ferris
v.
Coles.

" force of the said act of the legislature of the state of *New-* " *York*, an action hath accrued to the said *Edward*, who " sues in this behalf, as well for the poor of the said city of " *New-York*, as for himself, to have and demand of the said " *John*, the sum of 384 dols. parcel of the said 537 dols. " 60 cts. to wit, the sum of 50 cts. for every pound each " of such casks was tared less than the true weight," and also, " that the said *John* was the manufacturer of 384 " half-barrels of flour, which contained two pounds each, " less than the weight branded thereon, by reason, &c. an " action had accrued, &c." " to have and demand of the said " *John* the sum of 153 dols. 60 cts. (residue, &c.) being " the sum of twenty cents for every pound weight so de- " ficient," yet, &c. " to the damage of the said *Edward*, of " 537 dols. 60 cts." Plea the general issue, and joinder.

It was admitted that the plaintiff was required by the defendant to inspect 72 half-barrels of flour, which proved to be not only falsely tared, but deficient in quantity, and that the penalties thereby incurred were duly paid. That at this time the defendant had in his store 384 half-barrels, which had a few days before been inspected, and regularly marked and branded by the plaintiff, but that, on his finding the above deficiency and falsehood in the tare, he insisted on re-inspecting them, which the defendant refused to permit, and absolutely prevented from being done. It was further admitted, in order to try the plaintiff's right to inspect and weigh without request, that all the half-barrels were deficient in weight, as well as falsely tared, and that the defendant was both owner and manufacturer.

To the case detailing these facts and pleadings, the defendant subjoined the following points, as what he should rely on in argument. 1st. That the declaration makes a demand, and requires judgment to be rendered for the poor of the city of *New-York*, and *Edward Ferris*, whereas such a judgment cannot be given by law, under the act on which the suit is founded. 2d. That it is not averred in, nor does it appear by the plaintiff's declaration, that the 384 half-barrels of flour, alleged to have been falsely tared, and deficient in weight, were intended for exportation, without which the penalty would not arise.

3. That the plaintiff having once regularly inspected, marked and branded the said 384 barrels, was precluded from afterwards saying they were falsely tared, or contained less than their due quantity.

4. That the plaintiff had no right to inspect or examine without request.

*Riker* for the plaintiff. The first point raised, resolves itself into this; that the declaration is on behalf of the plaintiff, and the *poor* of the city of *New-York*, instead of being on behalf of himself and the *overseers* of the poor. It is, in effect, the same thing, for the overseers are to distribute and pay over to the poor, who are the persons actually interested. To name them was unnecessary, and totally insignificant. *Frederick* v. *Lookup*, 4 *Burr*. 2019. *French* v. *Wiltshire*, *Andrews*, 67. The action is given to " any person who will prosecute for the same." It might therefore, have been in the name of the plaintiff only. This was settled by the third resolution, in the first of the cases adduced. The answer to the second objection of the defendant is, that in the section of the act by which the penalties are imposed, general expressions are used, not confining them to flour, &c. intended for exportation, respecting which the antecedent clause contains directions. It must have been equally the intention of the legislature to protect the citizen from fraud, as well as the stranger, and this was the reason of the generality of expression used in regard to the penalties. The construction we contend for derives support from the 7th § which supposes an inspection previous to that on exporting. The third point receives an easy answer. The 384 half-barrels had been inspected and branded only as to quality. Such a circumstance could never prevent the right to inspect the tare and quantity. An attention to these two different objects of inspection, will remove all doubt on the last objection. Request is necessary to inspect, for the purpose of ascertaining the quality of flour to be exported; but not to detect imposition in weight and tare, and prevent defrauding the community.

*Riggs* contra. The authorities cited are under the *English* statute of the 9 *Anne* c. 14. *s*. 2. By the words of that act it is expressly ordained, that " it shall be sufficient for

" the plaintiff to allege the defendant or defendants is or are " indebted to the plaintiff." No such words are in our law. In the case from *Andrews*, the plaintiff used words not mentioned in the statute. That gave the action to the informer, and the plaintiff in stating the *per quod actio accrevit* said, " to the king, the poor," and the informer, upon which the court decided, that naming the king and the poor was surplusage. Our objection is not, that the plaintiff has said too much, but too little. He ought to have specified *the overseers of the poor.* A decision therefore on redundancy, cannot apply to an exception for deficiency. In the present instance, the court must find words giving authority to pronounce judgment in favor of the poor, or none can be rendered on this record. It is to be observed that the part of the declaration we complain of, is in the demand of the debt. The render is asked for the plaintiff and " *the poor;*" it ought to have been " *the overseers of the poor*," for the act directs one half of the penalty " to be *paid* to the over-" seers of the poor." No words in the introductory part of the declaration are to be rejected as surplusage, because it is the demand of what is due, and the rendition of judgment must be according to it. In debt for foreign coin, if the demand be that the defendant render the foreign money, no judgment can be pronounced. A doubt may be entertained how far the poor ought to have been named. It has been said they cannot sue. *Dickenson* v. *Clare,** 2 *Keb.* 280. In *Balchin* v. *Clarke, Barnes* 471, the court ruled, the trustees of a turnpike act need not be named in a *qui tam* action, where half the penalty was given to them. But the statutes under which the suit was brought, the 26 *G.* 2. *c.* 30. 28 *G.* 2. *c.* 17, do not order the money to be *paid* to the trustees, as our law does to the overseers. On the second objection, we submit to the court, whether the object of the legislature was not confined to our foreign commerce, leaving the injuries and wrongs offered our domestic trade to the remedies the law previously afforded. If so, the allegation was indispensible.

The clause by which a double inspection is glanced at, does no more than say, how often soever the casks have been inspected, still, they shall undergo an ultimate one, at the

* This case is not law as to the point cited. See 7 *Went. Plead.* 189, 190, 191. A precedent *contra* by Mr. *Tidd.*

place of exportation. This provision was dictated by the sole view of guarding our foreign trade. Had the defendant been about to export the flour, then indeed, I admit, that the plaintiff might have insisted on inspecting; but, in every other case we deny the right of doing so, undesired. The arguments on the other side would make every baker, nay, every person owning a barrel of flour, liable to the inspection-law, and also to the penalties, if falsely tared, or deficient in weight.

*Hoffman* in reply. The first objection is as to form. The cases cited shew it good. The statute of *Anne* gives the penalties imposed, one moiety to the informer, the other to the poor, and yet a suit by the informer only, may be maintained. Therefore, here we may sue without the overseers. If it was competent for the plaintiff to use his own name alone, then the authority from *Andrews* is decisive. But as courts of law recognise trusts, and take notice of those beneficially interested, there can be no impropriety in naming the *cestui que trust,* instead of his trustee. The conclusion of the declaration, is to the damage " of the said *Edward*," and this will warrant a judgment in his favor, on which he will, as to the moiety not given to him by the statute, be trustee for those intitled. The act makes it the duty of the owner, to have an inspection as to the quality; of the officer, as to tare and weight. The branding therefore, the former, cannot prevent ascertaining the latter. Whenever there is a " reason to " suspect" fraud in either of these, the officer has a right to inspect, without waiting for a desire to be made known, or confining the act to flour destined for exportation.

*Per curiam* delivered by TOMPKINS, J. Several points have been made for the consideration of the court; but I shall only notice one of them, which appears to me decisive. The object of the statute, was to prohibit the *exportation* of flour and meal, without being first inspected, in order to prevent those articles being brought into disrepute in foreign markets. Accordingly, the fourth section of the act provides, that no wheat flour, rye flour, indian meal, or buckwheat meal, shall be *shipped for exportation,* out of this state, before the same shall have been

submitted to the view and examination, and approved of, and branded by one of the inspectors. The fifth section refers to the fourth, and relates to flour and meal *manufactured for exportation.* The subsequent provisions of the act, also relate merely to flour and meal, purchased or manufactured for *exportation.* The words of the statute therefore, and the object of it, confine the duties of the inspector, and the penalties to be incurred, to flour and meal shipped, purchased or manufactured for exportation. In the present case, the inspector was not applied to for the purpose of inspecting the flour of the defendant, but what he did, was in opposition to the express orders of Mr. *Coles;* neither is it averred, or proved, that the flour in question, was either purchased, manufactured, or shipped for exportation. Upon this ground, I am of opinion, the plaintiff is not entitled to recover, and it is therefore, unnecessary to consider the other objections stated by the defendant.